UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-20291-CR-ALTONAGA

**UNITED STATES OF AMERICA**,

    Plaintiff,
vs.

**ARMANDO GONZALEZ**, *et al.*,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court on the Government's Motion for Revocation for Release Order (the "Motion") [ECF No. 134]. On June 18, 2012, Magistrate Judge Jonathan Goodman denied the Government's Motion for Pre-Trial Detention [ECF No. 129] of Defendant, Armando Gonzalez, ordering instead that the Defendant be released on a $300,000, 10 percent bond, with a Nebbia condition and other restrictions such as house arrest. (*See* "Release Order" [ECF Nos. 131, 133]). The Government sought and obtained a stay of the Magistrate Judge's Release Order. Thereafter, on June 27, 2012 and July 6, 2012, the undersigned held evidentiary hearings on the Government's Motion, hearing testimony from the Government's agent and considering documentary proof. Some of the evidence received was not presented to the Magistrate Judge.

Pursuant to 18 U.S.C. section 3142(e)(1), a defendant may be detained pending trial if "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." In determining whether detention of a defendant pending trial is appropriate, the court must consider (1) the nature and

circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See id.* § 3142(g)(1)–(4). On appeal of a denial of requested pre-trial detention, review is *de novo*, with purely factual findings reviewed for clear error, and the district court permitted to receive additional evidence. *See United States v. Hurtado*, 779 F.2d 1467, 1471 (11th Cir. 1985); *United States v. King*, 849 F.2d 485, 490 (11th Cir. 1988).

The Court makes the following findings with regard to the four statutory factors, based on the record as a whole, including the additional evidence presented by the parties on June 27 and July 6.

    **1.**    **Nature and Circumstances of the Offenses Charged**

Defendant is charged with one count of conspiracy to commit health care fraud, in violation of 18 U.S.C. section 1349; three counts of conspiracy to receive and pay health care kickbacks, in violation of 18 U.S.C. section 371; one count of conspiracy to commit money laundering, in violation of 18 U.S.C. section 1956(h); five counts of money laundering in violation of 18 U.S.C. section 1957; and five counts of money laundering in violation of 18 U.S.C. section 1956. By the Government's description, the Indictment in this case charges a number of Defendants with multiple crimes involving (1) millions of dollars in fraudulent proceeds; (2) received from Medicare (and Medicaid); (3) based on deceptive and sophisticated conduct including money laundering, shell companies, and the payment of kickbacks; and (4) spanning some six years and two states. Defendant is alleged to be the mastermind of the health care fraud conspiracy, and is the only Defendant for whom the Government has requested pre-

CASE NO: 12-20291-CR-ALTONAGA

trial detention. Defendant faces a potential term of imprisonment of 360 months to life.

The offenses charged, consisting of the theft of millions of dollars in Medicare funds, accompanied by sophisticated money laundering activities and the formation of shell companies, spanning a several year period and extending from South Florida to North Carolina, are extremely serious. Defendant, a 48-year old man, faces a lengthy prison sentence if convicted.

### 2. The Weight of the Evidence Against the Defendant

On July 2, 2012, the Court accepted Co-Defendant, Serena Joslin's ("Joslin['s]") plea of guilty to one count of conspiracy to commit health care fraud. In her Agreed Factual Basis for Guilty Plea [ECF No. 149], Joslin admitted Defendant's company, Health Care Solutions Network ("HCSN"), "recruited patients who were inappropriate for PHP treatment. Nevertheless, JOSLIN agreed with other HCSN employees to, among other things, fabricate therapy notes and other medical records . . . all to make it appear as if HCSN patients received appropriate PHP services. For example therapy notes were fabricated for patients with advanced dementia and Alzheimer's Disease who did not qualify for PHP treatment, for sessions during which patients would watch commercial movies with no therapeutic value, and for therapy that was never provided." (*Id.*). According to the Government, another cooperating witness charged separately by information has recently also entered a guilty plea to the charged conspiracy.

The Government has represented cooperating witnesses have stated Defendant directed the payment of illegal health care kickbacks to assisted living facilities and directed the falsification of medical records to conceal the submission of false and fraudulent claims. The Government has Medicare and Medicaid records and corporate and bank records tying the Defendant to HCSN in South Florida and North Carolina, as well as to shell companies through

CASE NO: 12-20291-CR-ALTONAGA

which funds were allegedly laundered, all supporting the charged offenses. Since the matter was heard by the Magistrate Judge, the Government's arsenal of evidence supporting the charged crimes, previously strong, has improved.

### 3. History and Characteristics of the Defendant

The Defendant was born in Cuba and came to this country at the age of 4. He was naturalized in 1993, shortly after being released from prison after serving a five-year sentence for a drug trafficking offense. It is the Court's understanding that Defendant continues to be a citizen of Cuba, although he has no Cuban passport. While the Defendant has no immediate family in Cuba, and his father was a political prisoner in Cuba, given the lengthy prison sentence Defendant faces and the uncontroverted fact that Cuba does not extradite Cuban nationals who flee to the island, the Defendant poses a serious risk of flight.

Moreover, the Court received evidence, not known to the Government before the hearing before the Magistrate Judge, that on May 2, 2012, upon his arrest, Defendant was giving his wife instructions to move close to one million dollars of Medicaid proceeds from an HCSN account to another, unknown account. While the funds have not been transferred, that may be because the Defendant is the only signatory on the account, which consists of a settlement fund paid by the State of Florida under its Medicaid program, presumably constituting part of the funds obtained from the fraudulent activities that are the subject of the Indictment. A review of the transcribed telephone conversation lends credence to the Government's many assertions, contained in the written briefing, that the Defendant has engaged in sophisticated deception and concealment, which further buttresses the concern over the Defendant fleeing and having access to funds to finance any move and relocation to a country that will not return him to the United States.

4

CASE NO: 12-20291-CR-ALTONAGA

House arrest and the daily checking-in of the Defendant by a person selected by the Magistrate Judge are no protection against the Defendant having the financial ability and desire to flee to Cuba to avoid a long prison sentence.

**4.     The Nature and Seriousness of the Danger to Any Person That Would be Posed by the Defendant's Release.**

Two cooperating witnesses, unrelated to each other, have separately disclosed that the Defendant made threats to harm them physically. The witnesses' redacted statements to authorities were first provided at the June 27 hearing. One of these witnesses is Joslin, whose guilty plea the undersigned accepted on July 2, and whose demeanor and appearance the Court was able to observe. While the Defendant challenges the veracity of these accounts, describing the cooperating witnesses as less than credible given the fraudulent conduct they have now admitted to and their motives to lie, many a conviction is obtained in large part on the strength of cooperating witnesses' testimony. Furthermore, the circumstances under which the threats were disclosed to the Government lend credence to the accounts of the threatening communications.

After a careful consideration of the factors under 18 U.S.C. section 3142(g), the Court agrees with the Government that no combination of conditions will reasonably assure the appearance of the Defendant and the safety of other persons. Accordingly, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 134]** is **GRANTED**. Defendant is ordered detained pending trial.

CASE NO: 12-20291-CR-ALTONAGA

**DONE AND ORDERED** in Chambers at Miami, Florida, this 6th day of July, 2012.

_____
**CECILIA M. ALTONAGA
UNITED STATES DISTRICT JUDGE**

cc: counsel of record