```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                           MIAMI DIVISION
                 CASE NO. 12-20291-CRIMINAL-ALTONAGA


  UNITED STATES OF AMERICA,           Miami, Florida

             Plaintiff,               February 25, 2013

        vs.                           12:44 p.m. to 1:04 p.m.

  ARMANDO GONZALEZ,

             Defendant.               Pages 1 to 13
  _____


                        SENTENCING HEARING
             BEFORE THE HONORABLE CECILIA M. ALTONAGA,
                   UNITED STATES DISTRICT JUDGE



  APPEARANCES:


  FOR THE GOVERNMENT:        WILLIAM J. PARENTE, JR., ESQ.
                             ASSISTANT UNITED STATES ATTORNEY
                             99 Northeast Fourth Street
                             Miami, Florida 33132
                                    -and-
                             ALLAN J. MEDINA, ESQ.
                             U.S. DEPARTMENT OF JUSTICE
                             CRIMINAL DIVISION - FRAUD SECTION
                             1400 New York Avenue NW
                             Washington, DC 20530

  FOR THE DEFENDANT:         JOAQUIN J. PEREZ, ESQ.
                             6780 Coral Way, Suite 200
                             Miami, Florida 33155

  FOR US PROBATION:          DEMESHA EDWARDS

  REPORTED BY:               LISA EDWARDS, RDR, CRR
                             Official Court Reporter
                             400 North Miami Avenue
                             Twelfth Floor
                             Miami, Florida 33128
                             (305) 523-5499
```

```
 1              THE COURT:  United States of America and Armando
 2    Gonzalez.
 3              MR. PARENTE:  Good afternoon, your Honor.  William
 4    Parente and Allan Medina on behalf of the United States.
 5              MR. PEREZ:  Good afternoon.  Joaquin Perez appearing on
 6    behalf of Armando Gonzalez, together with José Villanueva.  And
 7    we're here for sentencing.
 8              THE COURT:  Good afternoon.
 9              From Probation?
10              THE PROBATION OFFICER:  Good afternoon, your Honor.
11    Demesha Edwards on behalf of US Probation.
12              THE COURT:  Mr. Gonzalez, good afternoon.  We're here
13    for your sentencing hearing.  Have you had the opportunity of
14    reviewing with your attorney the presentence investigation
15    report?
16              THE DEFENDANT:  Yes, ma'am.
17              THE COURT:  I'll hear first from the Government and
18    then from defense.
19              MR. PARENTE:  Yes, your Honor.
20              As you're aware, there is a plea agreement in this
21    case.  And the parties have worked out certain agreements.  I
22    struggled a little bit with my comments today because of the
23    existence of the plea agreement and the cooperation that
24    Mr. Gonzalez has given to date, which I'll cover.
25              That being said, I think the Court, having sat through
```

 1   the various sentencings, is very familiar with the facts in
 2   this case, recognizes that Mr. Gonzalez was the leader and
 3   organizer of a conspiracy that ran seven years, spanned two
 4   states, and the impact that that had on the Medicare system.
 5          I think it's also worth mentioning again that the
 6   Government has to point out the fact that as a result of
 7   Mr. Gonzalez's conduct, it's had a significant impact on a
 8   number of individuals who have been before this Court in terms
 9   of their careers, their families and ultimately their lives
10   because of the conduct that Mr. Gonzalez orchestrated during
11   the period of the conspiracy.
12          That being said, I want to be clear that since late
13   2012, November-December 2012, the Government has met with
14   Mr. Gonzalez on two occasions.  On both of those occasions, the
15   Government found him to be very forthright in terms of his
16   conduct over the seven years of the conspiracy.  Because of his
17   cooperation, the Government was able to locate thousands of
18   documents stored in Miami related to the healthcare fraud
19   conspiracy, both in Miami and North Carolina.
20          In addition, Mr. Gonzalez has provided information on
21   all of the individuals that were identified in the superseding
22   indictment, Ms. Pampin, Dana Gonzalez, Lisset Palmero and Alina
23   Feas.  Because of that cooperation, the Government was able to
24   move forward in a timely fashion with that indictment, using
25   the documents that were recovered down in Miami.

1       It also -- those documents also enabled the Government
2  and the investigators to crystallize some of the theories
3  against the remaining Defendants, including Mr. Layman and
4  Ms. Eason.  There were specific documents that were able to
5  link activity in Miami at the Healthcare Solutions Network East
6  location to the fraud occurring up in North Carolina.
7  Essentially, notes that were being generated down here in Miami
8  were being used to document the fraud that was occurring in
9  North Carolina; and specifically, there were internal records
10 that were recovered that assisted the investigation.
11      His cooperation is ongoing.  The Government has a plea
12 agreement, as I mentioned, your Honor.  We're recommending a
13 low-end sentence.
14      We are not prepared at this time to make a motion to
15 reduce Mr. Gonzalez's sentencing.  It's unclear whether or not
16 we'll call him in the trial against Ms. Eason, assuming that
17 goes forward in April.
18      I don't think I have anything else, your Honor.
19      Thank you.
20      THE COURT:  Thank you.
21      Mr. Perez?
22      MR. PEREZ:  I don't have much to add to what was
23 presented.
24      I can advise the Court that Mr. Gonzalez from the
25 outset recognizes responsibility in this case.  And through me,

1  he met with the prosecutor and other members of the law
2  enforcement community.  As a result of those meetings, as the
3  prosecutor has indicated, indictments were returned against
4  three or four additional individuals; and also, his agreement
5  to testify was instrumental in persuading all the people,
6  particularly Mr. Layman, to enter a plea.
7       Having said that, pursuant to the plea agreement, we
8  cannot ask for variance.  I'm not asking for a variance.  But I
9  am asking for the low end of the sentencing guidelines, which
10 would be 135 months.
11      This is a significant sentence which sends a message to
12 the community.  But it also takes into account the steps that
13 Mr. Gonzalez has been taking in order to correct the mistakes
14 he made in the past.
15      I don't know if the Court has any questions.
16 Basically, of course, I'm asking for the low end of the
17 sentencing guidelines, which is 135 months.  Unless the Court
18 has any questions, that's the extent of my presentation.
19      THE COURT:  I do not.
20      Thank you.
21      Mr. Gonzalez, is there anything you would like to say
22 before I pronounce sentence?
23      THE DEFENDANT:  Yes, ma'am.
24      Summarizing words, I'm very ashamed of my conduct.
25 I've not only shamed myself; I've shamed my family, my

```
 1   children.  I've lost in the process my wife and my kids.  I've
 2   shamed this government.  I am trying to do what I can to assist
 3   in finalizing this case.
 4            Thank you.
 5            THE COURT:  Thank you.
 6            Before I pronounce the sentence, I want to alert the
 7   attorneys about my thought process in the event that you would
 8   like to say anything additional.
 9            It is not my intention to sentence Mr. Gonzalez to the
10   low end of the guidelines.  Quite the contrary.  And I can
11   explain my reasons why.  I'll give you an opportunity to say
12   anything in that regard before I sentence him.
13            MR. PEREZ:  Can you give us one minute?
14            THE COURT:  Certainly.
15            (Discussion had off the record amongst counsel.)
16            MR. PARENTE:  Your Honor, I spoke to Mr. Perez.  In the
17   past, he has spoken about his concerns.
18            The Government entered into a plea agreement in this
19   case.  Part of the reason, as the Court is well aware, that the
20   plea agreement is used is to provide certainty of the
21   sentencing process.
22            The Government is well aware of Mr. Gonzalez's conduct,
23   the severity of it and the impact it has had on the community
24   and the Medicare system.
25            That being said, he has provided significant
```

1  cooperation to date.  I expect the cooperation to continue.
2  But the Government is recommending that he be sentenced within
3  the parameters of the plea agreement and the terms of the
4  agreement between the parties.
5          THE COURT:  I understand.
6          Mr. Perez?
7          MR. PEREZ:  Having once had a similar situation before
8  the Court -- I remember the prosecutor at the time was Willie
9  Ferrer, who is now the US Attorney -- I knew that this was
10 likely to happen.  I mentioned to the Defendant that the Court
11 had very strong feelings about this type of case.
12         The only thing that I can suggest is that if the Court
13 wants to proceed -- I don't know if the Court will entertain to
14 delay the sentencing in order to allow the cooperation to be --
15 against --
16         THE COURT:  It's not my practice, Mr. Perez.
17 Cooperation is a separate matter from what is the appropriate
18 sentence for the crime committed.
19         MR. PEREZ:  I understand, although I'll tell you, in
20 other districts, typically cases get delayed so that the person
21 can express their cooperation.
22         All I can hope is that if and when we return before the
23 Court, the Court takes into account what happened here.  And if
24 and when the Government, assuming they file a motion for
25 sentence reduction -- obviously, the Court can take the

1    cooperation, which it is of course entitled to do, and the
2    recommendation by the Government in order to bring about a
3    resolution of the case; and perhaps it will be consistent with
4    the efforts that Mr. Gonzalez is making to provide assistance
5    to the Government.
6             THE COURT:  Thank you.
7             Anything else, Mr. Gonzalez?
8             MR. PEREZ:  No.
9             THE COURT:  The advisory guidelines here recommend a
10   sentence of between 135 to 168 months based upon an offense
11   level of 33 and a criminal history category of I.
12            There is no objection to how the advisory guidelines
13   have been applied.
14            The next step at sentencing, of course, is to address
15   the factors in 18 United States Code Section 3553.  And it is
16   no surprise to the parties that one of those factors which
17   bears strongly in my decision-making in this type of a case is
18   the seriousness of the offense committed.
19            Seven years, over $28 million stolen from the Federal
20   Government's Medicare program in two states involving numerous
21   participants.  Brazen, calculated, committed by a man whose
22   background and age are similar to my own, coming from the same
23   community, aware of what the issues are here in South Florida,
24   taking those issues to North Carolina in full and complete
25   disregard of the crisis that we face as a nation, as a people,

```
 1  in keeping the Medicare program alive to give medical care to
 2  those who desperately need it, all for enriching himself.  The
 3  seriousness of the offense under 3553 is a factor that
 4  militates strongly in favor of not a sentence at the low end,
 5  but at the high end.
 6           Deterrence:  What does it take to stop others from
 7  doing this?  There is no end in sight.  And I think only
 8  significant sentences, significant prison time, widely
 9  publicized, may have that effect.
10           Those are the two primary factors in my mind that call
11  out for a sentence at the high end, if not higher, for
12  Mr. Gonzalez.  Frankly, even at the high end, it's not long
13  enough to account for the wrongs committed, the way in which
14  they were committed, the knowing and deliberate way in which
15  they were committed.
16           It is the judgment of the Court that the Defendant,
17  Armando Gonzalez, is committed to the Bureau of Prisons to be
18  imprisoned for 120 months as to Count 1 and 168 months as to
19  Count 11, to be served concurrently.
20           I find the Defendant is not able to pay a fine as well
21  as restitution.  No fine is imposed.
22           The Defendant will pay restitution jointly and
23  severally with his Co-Defendants and Sarah Da Silva Keller in
24  Case No. 12-20289-Criminal-Cooke and Alba Serrano in Case No.
25  12-20285-Criminal-Seitz in the amount of $28,092,283.59.
```

1            During incarceration, payment shall be as follows:  If
2   the Defendant earns wages in a Federal Prison Industries job,
3   he must pay 50 percent of wages earned toward the financial
4   obligations imposed.
5            If the Defendant does not work in a Federal Prison
6   Industries job, he must pay a minimum of $25 per quarter toward
7   the financial obligations imposed.
8            Upon release from incarceration, the Defendant will pay
9   restitution at the rate of 15 percent of monthly gross earnings
10  until such time as the Court alters that payment schedule in
11  the interest of justice.
12           The US Bureau of Prisons, the US Probation Office and
13  US Attorney's Office will monitor the payment of restitution
14  and report to the Court any material change in the Defendant's
15  ability to pay.
16           These payments do not preclude the Government from
17  using any other anticipated or unexpected financial gains,
18  assets or income of the Defendant to satisfy restitution.
19           Restitution is to be made payable to the Clerk of the
20  United States Courts and in turn to be forwarded to the victim.
21           Upon release from incarceration, the Defendant will be
22  on supervised release for three years.  Within 72 hours of
23  release, the Defendant will report in person to the probation
24  office in the district to which he is released.
25           While on supervised release, the Defendant will not

```
 1   commit any crime; he is prohibited from possessing a firearm or
 2   other dangerous device; he will not possess a controlled
 3   substance; he will cooperate in the collection of DNA; he will
 4   comply with the standard conditions of supervised release,
 5   including the following special conditions:
 6          The Defendant is to perform 300 hours of community
 7   service.  He is to comply with the financial disclosure
 8   requirement, no new debt restriction and healthcare business
 9   restriction, all of which are noted in Part G of the
10   presentence investigation report.
11          The Defendant will pay to the United States a special
12   assessment of $200.
13          I understand there is to be forfeiture; and that being
14   the case, the Government is to supply a proposed order of
15   forfeiture within three days.
16          Now that sentence has been imposed, does the Defendant
17   or his attorney object to the Court's findings or the manner in
18   which sentence was pronounced?
19          MR. PEREZ:  No, we do not.
20          THE COURT:  Mr. Gonzalez, you have the right to appeal
21   the sentence.  Any notice of appeal must be filed within 14
22   days after entry of the judgment.  And if you're unable to pay
23   the cost of an appeal, you may apply for leave to appeal *in*
24   *forma pauperis.*
25          Is there anything additional?
```

1             MR. PARENTE:  There is one, your Honor, related to
2    forfeiture.  The Government previously filed in this case a
3    temporary order of forfeiture in Docket Entry No. 345.  Can we
4    incorporate that as part of the J&C by reference?
5             THE COURT:  Very well.
6             MR. PARENTE:  Thank you.
7             MR. PEREZ:  The Defendant has waived his right to an
8    appeal pursuant to the agreement.
9             One of the problems in this type of cases in moving so
10   quickly to sentencing is that there will be a very significant
11   amount of work that needs to be done in the future.  In cases
12   like this -- I was appointed to represent Mr. Gonzalez.  It
13   will be -- there will be a period of time in which he will be
14   without an attorney.
15            And I just want the Court -- I don't plan to appeal
16   this case.  But that's one of the concerns that I have whenever
17   sentencing occurs so quickly and then really the bulk of the
18   work has to be done in the future, hopefully leading up to some
19   form of sentence reduction as a result of his cooperation.
20            THE COURT:  Anything else, gentlemen?
21            MR. PARENTE:  Not from the Government, your Honor.
22            THE COURT:  You all have a good day.
23            MR. MEDINA:  Thank you.
24            (Proceedings concluded.)
25

```
 1                       C E R T I F I C A T E
 2
 3          I hereby certify that the foregoing is an
 4   accurate transcription of the proceedings in the
 5   above-entitled matter.
 6
 7
     _____         /s/Lisa Edwards
 8      DATE              LISA EDWARDS, RDR, CRR
                          Official United States Court Reporter
 9                        400 North Miami Avenue, Twelfth Floor
                          Miami, Florida 33128
10                        (305) 523-5499
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```